## BUTLER AND WIFE V. BUTLER AND HALSEY.

A testator directed a division of his estate to be made at the expiration of seven years from his death, provided his daughter had then been dead two years, and gave, out of a fourth part, the sum of $500 to a legatee, and that the residue should be paid to a trustee, to keep the same invested, and pay the income to S. M. B., until the eldest child of the said S. M. should arrive at the age of twenty-one years; then to divide it among the children of said S. M.

The eldest child living at the death of the testator, was about nine years old, and the youngest six months—one was subsequently born.

*Held,* that even assuming the term "eldest child" could be limited to the eldest living at the testator's death, the devise was void, as alienation would be suspended for a certain period of twelve years.

Held, that the term meant the child which should first arrive at age.

Any limitation which may, by possibility, produce a more extended suspension than for two lives in being, is void.

The disposition of the income being for a period not permitted, was also held invalid.

THIS cause was submitted on written arguments.

*Mr. A. L. Robertson,* for complainants.

*Mr. Wm. H. Bell,* guardian of the infants.

*Mr. J. L. Riker,* for S. A. Halsey.

THE ASSISTANT VICE-CHANCELLOR :—The bill seeks a declaration that the complainants are entitled to the full amount of the income of a certain share of the estate of Thomas Arden, deceased; that such full income may be paid to them, with the arrears now unpaid beyond the sum annually allowed by the defendant, the trustee.

The rights of the parties arise, first under the will and various codicils of Thomas Arden, and next under the instrument termed the compromise deed. It is necessary, especially with a view to the rights of the infants, to examine each minutely.

Thomas Arden made his will bearing date the 19th day of January, 1831, duly executed, whereby he gave all his estate, real and personal in trust, to pay his debts, &c., and to invest all monies arising from it, after deducting the annuities and legacies therein given, so to accumulate for the benefit of his estate during the term of seven years after his death.

Next, within twelve months after his death to pay to the General Assembly of the Presbyterian Church $500, to pay to his daughter Sally Verplanck, during her life, an annuity of $2,000, payable in quarter yearly payments; next, to pay to each of his grand-children Philip Verplanck, Eliza A. Verplanck, William B. Verplanck, and Sally Arden Verplanck, an annuity of $1,000 to be paid in yearly payments, commencing six months after his death, and to be paid to them personally during such term of seven years.

At the expiration of such term of seven years after his death, (provided his daughter Sally had been then dead for two years,) the estate as it then existed to be divided into four equal parts; one fourth to be paid to each of his four grand-children above named; giving however a discretion under certain circumstances to pay the amount of a share, or to invest it for the party's benefit.

If his daughter Sally was alive at the end of seven years, the division was not to be made until the expiration of two years from her decease.

Certain advances to Philip and William B. were directed to be charged to them at the time of the division.

John L. Riker, Stephen A. Halsey and Philip Verplanck, were appointed executors.

On the 17th day of September, 1833, the testator made a codicil to his will in which he revoked the bequest to William B. Verplanck, and directed his executors to pay

$1,000 annually to Philip, Eliza, and Sally A. And at the time of the division to divide his estate as then existing in thirds, and pay one third to each of them, providing, however, that William B. should retain the $20,000 advanced to him, but should receive no further sum from his estate : ratifying and confirming his will in every thing not thereby revoked.

On the 7th of November, 1833, he executes another codicil, in which he gives to John J. Halsey, son of Stephen A. Halsey, a legacy of $10,000 to be paid by his executors.

On the 6th of February, 1834, he makes a third codicil, wherein he directs his executors to pay to Mrs. S. M. Butler, daughter of his late son Thomas, $1,000 annually for the term of seven years after his death, and also at the division of his estate at the end of said term to pay over to her one fourth of his estate as it may then exist; one fourth to Philip ; one fourth to Eliza ; and one fourth to Sally A. He then recites the annuity given to his daughter Sally, and that she was dead, and proceeds—" Instead thereof I " direct my executors to pay over, after the legacies and " other annuities are paid, all the rest and remainder of " the income of my estate to my friend Stephen A. Halsey, " during the said term of seven years after my decease, for " his own use and benefit."

On the 2d of April, 1834, the testator makes a fourth codicil duly executed, in which he recites his will and three previous codicils, and proceeds, " Now I do hereby " revoke and make void so much of the said third codicil " as directs that on the division of my estate a certain part " thereof be paid to Sally Mary Butler, daughter of my " late son Thomas; and instead thereof, I direct my execu- " tors to pay over to Mrs. Betsey Arden, widow of my late " son Thomas, five hundred dollars of said sum, and the " remainder to pay over to Stephen A. Halsey in trust for " the following purpose, to wit, to invest the same in a " manner deemed most secure by him, and to pay over to " Sally Mary Butler the income of said sum semi-annu- " ally, until the eldest child of the said Sally Mary shall " arrive at the lawful age of twenty-one years ; and at that

" period to divide the same as it may then exist into as " many equal shares as there may then exist children of " said Sally Mary Butler, and to pay over to each child " his or her share on arriving at the lawful age of twenty- " one years." He then confirms his will and other codicils in every particular not altered or revoked by the present one.

The whole estate consists of personalty.

The result of the various provisions of the will and codicils, is, that the legacy of $500 to the assembly was to be paid out of the capital of the estate as well as a legacy of $10,000 to John J. Halsey. That an annuity of $1,000 each, was to be paid to Philip, Eliza A. and Sally A. for the period of seven years from the testator's death; that the whole surplus of the income of such seven years was payable to Stephen A. Halsey. Upon the expiration of the seven years, the property was to be divided in fourths, one fourth to be paid to Philip, one fourth to Eliza A., one fourth to Sally A., leaving a discretion to pay interest only in certain circumstances; and the other fourth was to be disposed of, by paying out of it $500 to Mrs. Betsey Arden, and by giving the residue in trust to Halsey to invest and keep it invested until the eldest child attained the age of twenty-one years, paying the annual income thereof to Mrs. Butler until the occurrence of that event.

Then arises the question which of these provisions can stand?

Beginning at the last codicil it seems to me very clear that the limitation to Halsey in trust is void.

It appears that the eldest child of Mrs. Butler, living at the death of the testator, was about nine years of age, and the youngest about six months; that one was born about two years subsequently.

I cannot frame an argument upon which this limitation can be supported under the provisions of the statute, and the decisions upon it. If the phrase, " eldest child," could be limited to the eldest living at the testator's death, a fixed period of twelve years must elapse before the property could be absolutely aliened. And if, as is the true

construction, the term refers to the first child which should arrive at age, the period is fixed by that event, and may be longer or shorter according to accidents, and might extend not merely to 23 years after his death, as would be the case if all the present children should die under age except the youngest, but to a period only restricted to the coming of age of the last child that Mrs. Butler might ever have. Now the rule is inflexibly established, that there can be no limitation of personal estate by which the power of entire alienation shall be suspended for a longer period than the continuance of two lives in being at the death of the testator. Any limitation which may by any possibility produce a more extended suspension is void. (*Hone* v. *Van Schaick*, 7 *Paige*, 231. *Gott* v. *Cook*, ibid. 521.)

Counsel have urged that the bequest to the children is vested; but whether so or not, is immaterial. It is a plain limitation of a future interest, both to Mrs. Butler and her children. It is not to begin in operation till the end of seven years, and all future or contingent interests in personal property are subject to the rules prescribed in the case of lands. (1 *R. S.* 773, § 2.) Future estates in land are vested or contingent. If the phrase here used could include children born after the testator's death, the estate would be contingent, as the children to take could not be known. It is the children *then existing*. But at any rate it is a future estate. It is to commence in possession at a future day, and it suspends the power of disposition beyond the permitted period.

The conclusion is unavoidable that this disposition in the fourth codicil was void, and it was equally void as to the income receivable by Mrs. Butler, as to the capital divisible among the children. The provisions were inseparably connected, and the trust was for both.

The parties then interested under the will and codicils were Philip, Eliza A., Sally A., Mrs. Butler, and S. A. Halsey. And the next of kin were Philip, Eliza A., Sally A., Mrs. Butler, and William B. Verplanck. All these being competent to dispose of their property as they thought

proper, make the deed of the 1st of June, 1837, called the compromise deed. Sally A. was then married to C. B. Miller, and Eliza A. to Philip A. Verplanck.

By that deed it is declared that Stephen A. Halsey as trustee of Mrs. Sally M. Butler and her children, according to the fourth codicil annexed to the will, is entitled to receive the sum of $42,611 56, liable to a certain deduction mentioned therein, subject to the payment of the legacy of $500 given to Mrs. Betsey Arden by the fourth codicil annexed to such will. That said Butler and his wife ratified the compromise and division, and acknowledged that there had been set apart and assigned to Stephen A. Halsey as trustee of said Sally M. and her children as aforesaid, and the said Halsey acknowledged to have received as such trustee, in bonds and mortgages as specified in account No. 9, and in distribution of said Arden's estate, $41,716 22, which, with a certain sum afterwards to be received on Cruger's bond, made up the full share to which the said trustee of said Sally and her children were entitled upon such compromise, subject to the payment of the legacy of $500, given to the said Betsey Arden, at the time specified in the said fourth codicil.

I consider that the rights of the parties are entirely to be governed by this instrument, except so far as it refers to another for its construction or explanation. Whatever were the rights of Mrs. Butler under the third codicil, it is needless to inquire. If it were open, a very nice question would arise whether, viz: the clause of revocation in the fourth codicil was operative, inasmuch as the substituted limitation could not take effect. Now the declaration of the instrument is, that Halsey, as trustee of Mrs. Butler and her children, according to the fourth codicil, is entitled to receive a certain amount. He then acknowledges, that as such trustee as aforesaid, he has received the specified securities, that is as trustee under the fourth codicil.

In all this there is nothing inconsistent with the supposition, that the property was then taken and held according to the trusts of the fourth codicil, but to go into effect immediately. That it was to be considered as if the

division had been made ; that the time had arrived or been anticipated. And this view agrees with almost all other clauses of the instrument. All the other parties take their shares at once, although the time specified in the will had not arrived by four years. The right of Stephen Halsey to the income for seven years, deducting the annuities, was of course transferred to him as its then value. It is true the payment of $500 to Mrs. Arden is not to take place till the period fixed for the division by the codicil, viz : the end of seven years. I do not think this sufficient to avoid the force of the other parts of the instrument. In this particular only is that period adopted as the time for such specific payment.

It is true that the limitation of this instrument is as objectionable as that of the codicil itself. Although Mrs. Butler takes the income from its date, yet the future estate cannot come into possession of the children until the eldest child comes of age. I have before commented upon the meaning of this phrase, and it renders the suspension too long upon any interpretation.

But I was bound to construe the codicil, and see whether it could be sustained or not, because the children of Mrs. Butler had a palpable interest in supporting it. It was of little moment to them where the income went for seven years ; as at the end of that time their mother would take the whole, and they eventually get the capital. Now however, all their right and claim is of the mere bounty of the various parties interested as legatees, or as next of kin ; and all such—every person who could impeach such a provision, have united in sanctioning it. There can be no objection to giving effect to an instrument, where all who could avoid it, preclude themselves from the attempt.

I consider, therefore, that the complainants are entitled to the whole income from the date of the instrument of compromise. Prior to that time Mrs. Butler had a right to the $1,000 out of the income, and no more. Mr. Halsey took the rest subject to the annuities, and could dispose of it as he chose.

I do not find whether the surplus income which had

accrued prior to 1837, was taken into consideration, or entered into the division. I presume, from Mr. Halsey's answer, that it has been accumulating for the children. At any rate it was subject to his exclusive control, except as far as it has gone into the division.

Decree accordingly. The costs of the several parties to be paid out of the fund.